No. 32,298

Leigh Clark, *Plaintiff*, v. Ed Murray, *Defendant.*

(41 P. 2d 1042)

Opinion filed March 9, 1935.

*Ralph T. O'Neil, John D. M. Hamilton, Barton E. Griffith* and *Peter F. Caldwell,* all of Topeka, for the plaintiff.

*W. D. Jochems, A. M. Cowan, J. Wirth Sargent, Emmet A. Blaes,* all of Wichita, and *Harry E. Martz,* of Topeka, for the defendant.

The opinion of the court was delivered by

THIELE, J.: This is an action in quo warranto to determine who is entitled to the office of judge of the city court, division No. 2, of the city of Wichita.

At the general election in 1932 plaintiff was elected to the above office, the duties of which he assumed January 9, 1933. At the general election in 1934, plaintiff was again a candidate, and was opposed by defendant, who received a majority of the votes cast, was declared elected and a certificate of election was issued to him.

Plaintiff's contention is that by reason of change in population of the city of Wichita in 1930, the city court of Wichita came under the provisions of chapter 180 of the Laws of 1927 (R. S. 1931 Supp. 20-2101 *et seq.*), and that under section 5 of that act, as amended by chapter 170 of the Laws of 1929 (R. S. 1933 Supp. 20-2105), he was elected for a four-year term; that by reason thereof there was no office to be filled at the 1934 election and the election of defendant is a nullity. We need not notice plaintiff's claims that he protested, prior to the primary and general elections of 1934, that there was no expiration of term of office, and therefore no occasion for an election, nor defendant's contention that plaintiff, having been a candidate, is estopped to claim that he held under a four-year term, for whether the city court of Wichita exists under chapter 180 of the Laws of 1927, as amended, or under other statutes, hereafter referred to, is a question of law, and the determination of that question is decisive of the controversy.

Prior to 1906 our constitution provided that all laws of a general nature should have uniform operation throughout the state, and that no special law should be enacted where a general law could be made applicable, the legislature being the judge as to the necessity. In 1906 the constitution was amended, and since then whether a law enacted is repugnant to this section of the constitution is to be construed and determined by the courts of the state (Const. art. 2, § 17).

The statutes involved here apply only to the cities of Kansas City and Wichita. In 1897 a special act was passed establishing a city court in Kansas City township, Wyandotte county (Laws 1897, ch. 107). It was subsequently amended in many particulars, the legislative history being shown appended to R. S. 20-1701 and R. S. 1933 Supp. 20-1701. In 1927 the statute, as it then existed, was entirely repealed by chapter 180 of the Laws of 1927 (R. S. 1933 Supp. 20-2101 *et seq.*). This last act on its face is of general nature, but by reason of its population requirements applied only to Kansas City. While in many respects it differs from the repealed statute, essentially it provides for a city court establishment, and the machinery under which it shall operate, just as the repealed act did. Section 1 provided that in all cities of the first class now having or hereafter acquiring a population of more than 110,000 there should be a city court, and provided the act should not be

construed to abolish any city court of Kansas City township or terminate the office of any officer thereof prior to January 2, 1929. In 1933 this section was amended to make the population requirement 117,000 (Laws 1933, ch. 172, R. S. 1933 Supp. 20-2101). Section 5 of the act fixed the term of office of the judges at two years, but was amended in 1929 to provide that at the general election in 1932 and each *four* years thereafter, two judges should be elected, each judge to hold his office for a term of *four* years. (Laws 1929, ch. 170, R. S. 1933 Supp. 20-2105.) Reference is later made to the title of this last act.

In 1899 a special act was passed establishing a city court in Wichita city township in Sedgwick county. (Laws 1899, ch. 130, R. S. 20-2001.) In 1927 an act of a general nature, but applicable only to Wichita city township, was passed, amending R. S. 20-2001, and providing for a city court in every township in the state located in a county having a population not less than 100,000 nor more than 125,000 and then having a city court (Laws 1927, ch. 182, R. S. 1931 Supp. 20-2001). It was again amended in 1933 to make the population requirements 100,000 to 135,000. (Laws 1933, ch. 171, R. S. 1933 Supp. 20-2001.) The original Wichita act fixed the judge's term of office at two years and it has never been changed.

Such other changes as have been made in both the Kansas City and Wichita acts as need be noticed will be hereafter mentioned.

When the legislature in 1927 amended the Wichita court act, fixing population limits, and repealed the Kansas City court act and enacted chapter 180 applicable only to cities having over 110,000 population, there was no doubt that one act applied to Wichita and the other to Kansas City. After that year both the city of Wichita and Sedgwick county increased in population and since then the census shows the following:

| Year | City of Wichita | County of Sedgwick |
|---|---|---|
| 1929 | 108,117 | 130,543 |
| 1930 | 114,388 | 138,293 |
| 1931 | 106,717 | 130,941 |
| 1932 | 104,165 | 129,275 |
| 1933 | 101,566 | 127,582 |
| 1934 | 99,824 | 125,164 |

If it be held that for the city of Wichita to have a city court, Sedgwick county must have not less than 100,000 nor more than 125,000 population, then in 1929 the county having an excess popu-

lation, which until the amendment continued to be excessive, there was no city court in Wichita city township. On the other hand, by the same process of reasoning, if it be held that by reason of the city's having a population of 114,388 in 1930, it came within the terms of R. S. 20-2101 *et seq.*, then as soon as it dropped below 110,000 population, it ceased to be within the act, and the city was without a city court. Plaintiff argues that when Wichita attained a population of over 110,000 it came within the purview of the last mentioned act and there it remained, and in 1932, when he was elected judge it was for a four-year term. If that be true, then the act of the legislature in enacting chapter 171 of the Laws of 1933, and amending the Wichita court act to make the population limits 100,000 to 135,000 population, was fruitless, for we take notice of the fact there would be no field for operation of the act, at least it made provision for no situation not already provided for.

Under the circumstances, it is quite apparent that the legislature did not intend that Wichita township should not have a city court, and under which law it did have such a court is a question of statutory construction.

The books are full of rules for statutory construction, but they were all enunciated with the idea of determining what the legislature had in mind in enacting the acts under consideration. It is a cardinal rule that all statutes are to be so construed as to sustain them rather than, ignore or defeat them; to give them operation if the language will permit, instead of treating them as meaningless. (Lewis' Sutherland Statutory Construction, § 498.)

In Black on Interpretation of Laws (2d ed.) is the following:

"When the interpretation of a statute according to the exact and liberal import of its words would lead to absurd or mischievous consequences, or would thwart or contravene the manifest purpose of the legislature in its enactment, it should be construed according to its spirit and reason, disregarding or modifying, so far as may be necessary, the strict letter of the law." (§ 29.)

"When a resort to extrinsic evidence becomes necessary, in the construction of a statute, it is proper to consider the facts of contemporary history, the previous state of the law, the circumstances which led to the enactment, and especially the evil which it was designed to correct, and the remedy intended." (§ 91.)

"A construction put upon a statute by the legislature itself, by a subsequent act or resolution, cannot control the judgment of the courts; but it is entitled to weight and consideration in case of doubt or obscurity." (§ 95.)

Here we have a situation where there is uncertainty as to which act applies to Wichita city township, and while, perhaps, there is no ambiguity in either statute standing alone, as applied to the undisputed facts, there is an ambiguous situation. In such case, it is proper to consider, in construing one statute, another statute bearing upon the same subject matter, the rule being stated in 59 C. J. 1042 (Statutes § 620):

"Statutes in *pari materia* are those which relate to the same person or thing, or to the same class of persons or things, or which have a common purpose, and although an act may incidentally refer to the same subject as another act, it is not in *pari materia* if its scope and aim are distinct and unconnected. It is a well-established rule that in the construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although they were enacted at different times, and contain no reference to one another. The endeavor should be made, by tracing the history of legislation on the subject, to ascertain the uniform and consistent purpose of the legislation, or to discover how the policy of the legislature with reference to the subject matter has been changed or modified from time to time. In other words, in determining the meaning of a particular statute, resort may be had to the established policy of the legislature as disclosed by a general course of legislation.. With this purpose in view therefore it is proper to consider, not only acts passed at the same session of the legislature, but also acts passed at prior and subsequent sessions, and even those which have expired or have been repealed."

"Statutes in *pari materia*, although in apparent conflict, should, so far as reasonably possible, be construed in harmony with each other, so as to give force and effect to each, as it will not be presumed that the legislature, in the enactment of a subsequent statute, intended to repeal an earlier one, unless it has done so in express terms; nor will it be presumed that the legislature intended to leave on the statute books two contradictory enactments. But if there is an unreconcilable conflict, the latest enactment will control, or will be regarded as an exception to, or qualification of, the prior statute." (§ 621, p. 1051.)

"It has been held that, in the construction of a statute, contemporaneous legislation, although not precisely in *pari materia*, may be referred to in order to ascertain the intent of the legislature in the use of particular terms." (§ 622, p. 1056.)

See, also, 25 R. C. L. 1060 (Statutes § 285) *et seq.*, treating on the same subject.

It is apparent that when the various city courts were established it was by virtue of special acts. In so far as Wichita city township is concerned, it will be observed that there is a continuation of legislation so far as its city court is concerned. Each act with reference to

it is an amendment of some previous section by specific reference, even though since the change in the constitution the amending acts purport to be of general application. Perhaps so far as the Kansas city court is concerned, this is not so clear, for when chapter 180 of the Laws of 1927 was enacted, the former Kansas City court act was repealed, yet even there specific reference is made to the Kansas City court, and the act, although stated as of general nature, was by its terms limited to the Kansas City court as of the date of its passage, and when the last-mentioned act was amended by chapter 172 of the Laws of 1933, to raise the population limit to 117,000, the effect was to make it applicable only to Kansas City township. And as bearing on the question of intent of the legislature to keep the two courts separate and distinct, attention is directed to the enacting clause of chapter 170 of the Laws of 1929, relating to city courts in cities of the first class of not less than 110,000 population in counties "having an assessed valuation of less than $200,000,000," and amending certain sections of chapter 180 of the Laws of 1927. While the title of the act is broader than its subject matter, it indicated a legislative interpretation that chapter 180 of the Laws of 1927 should not apply to the Wichita court, for the assessed valuation of Sedgwick county for the years here material was as follows:

| | |
|---|---|
| 1929 | $209,561,686 |
| 1930 | 221,480,344 |
| 1931 | 228,758,527 |
| 1932 | 213,209,500 |

In 1933 the valuation of the county was below $200,000,000, but in that year and before assessed valuation was determined, chapter 171 of the Laws of 1933 was enacted.

While in a general way the two series of acts are similar, there are many respects in which they are absolutely different. Judges in Kansas City receive $3,600 per year, in Wichita $3,000, although from 1929 to 1933 they received the same salary, and the salaries of the clerks and marshals also differ. The Kansas City court has parole powers, the Wichita court does not. The Wichita court has a court stenographer, the Kansas City court does not. The Kansas City court has certain powers in aid of execution, the Wichita court does not. In the Wichita court act change of venue may be taken to the district court; there is no similar provision in the act under which Kansas City operates. And other changes might be noted.

From the whole chain of legislation, it is apparent that the legislature meant that in so far as city courts are concerned, Wichita city township was to be governed under one series of acts, and that Kansas City township was to be governed under another series of acts, otherwise there was no point in making separate and distinct provisions for them. It may be conceded that the method of legislation left something to be desired in the way of clarity, and that in so far as population limits are concerned that the legislation did not keep quite abreast of the growth of the city of Wichita and Sedgwick county, but it is clear that whatever may be said, it was never intended that either Wichita city township or Kansas City township should at any time be within the purview of legislation patently enacted for the regulation of the other.

Our conclusion is that when plaintiff was elected to the office of judge of the city court of Wichita city township, division No. 2, at the general election in 1932, it was for a two-year term; that there was an expiring term in the office to be filled at the general election in 1934, and the defendant, having received a majority of the vote of the electorate thereat and having been duly declared elected, is entitled to that office.

The plaintiff is not entitled to the relief prayed for, and judgment is entered for the defendant.

DAWSON, J. (concurring specially): I concur in the judgment and have no criticism to offer on the interpretation of the statutes on which the judgment is predicated. However, I think the judge of the Wichita city court holds for a two-year term for another and all-controlling reason, which is this: These city courts were created years ago by special acts to serve a pressing need for a more adequate administration of justice than the justices of the peace of common-law times were wont to render. But in experimentally groping its way to this consummation, the legislature had no thought that it was doing aught but creating an improved type of *township* court and vesting in *township* functionaries the power to conduct it. At their first inception these special acts expressly stated that they were created to serve such need—in Kansas City township (Laws 1897, ch. 107) ; in Topeka township (Laws 1899, ch. 129) ; and those acts declared that their civil and criminal jurisdiction should be the same as that exercised by justices of the peace, with the same procedure, etc. Indeed, the whole train of special city court acts which fol-

lowed in the wake of the two just mentioned avowed the same purpose. See the Atchison city court act (R. S. 20-1501), the Coffeyville act (R. S. 20-1601), the Leavenworth act (R. S. 20-1801). The tinkering to which these acts have been subjected in the lapse of years has not, and indeed could not, alter their fundamental character. Those courts are still *township* courts and their functionaries are *township* officers, or the statutes creating them are waste paper. The constitution declares that township officers shall be elected at the biennial elections in November and that all township officers shall hold their offices for a term of two years. (Const., art. 4, § 2.) The rulings of this court are not unduly strict in gauging the validity of special statutes in the light of constitutional provisions; but it should be conceded that substantial uniformity in tribunals established throughout the state for the administration of justice is a more vital matter than it is in the ordinary run-of-the-mill enactments which occupy so much space in our biennial session laws.

I have no doubt about the power of the legislature to create judicial tribunals other than those specified in the constitution; but I insist that when a special act avows its purpose to create a *township* court, such avowal is not to be construed as mere lip service to the constitution—to be forgotten whenever those specially concerned with its operation conceive the idea they have sufficient influence to lobby through the legislature a bill changing their official terms to four years when the constitution declares they shall be but two.