Commonwealth *v.* Thompson, Appellant.

Argued January 6, 1936. Before KEPHART, C. J., SCHAFFER, DREW, LINN and BARNES, JJ.

328

*John J. Stetser,* for appellant.

*Wm. J. MacCarter, Jr.,* former District Attorney, with him *Wm. B. McClenachan, Jr.,* District Attorney, and *C. William Kraft, Jr.,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE BARNES, March 23, 1936:

This is an appeal from a judgment and sentence upon a verdict of murder in the first degree, with the penalty fixed at death.

The defendant was convicted of the killing of Maude Vivian Hoopes, on January 15, 1935, while committing burglary in the home of the deceased. The defendant offered no evidence at his trial. Most of the facts were undisputed. The story of the defendant, set forth in unsigned confessions, was placed in evidence without objection, and agrees with the testimony of the Commonwealth's witnesses.

The record discloses that about midnight, January 14, 1935, the defendant left his home in Chester, armed with a .38 calibre revolver, for the purpose of robbing a house. He had no particular house in mind, and selected the house in which the deceased lived with her husband, Carlos A. Hoopes, on Twin Oaks Road, in Upper Chichester Township, Delaware County. He reached the home of the deceased in the early morning of January 15, 1935, saw that the house was in darkness, and effected an entrance by opening a porch window, where he found a key to the front door. He unlocked the door with this key and entered the house. This key had been

left for use that night by Murray H. Taylor, a cousin of deceased, who lived at the Hoopes residence. Defendant ascended the steps to the second floor when he heard someone entering the front door, and quickly hid in a closet in the hallway.

The deceased and her husband occupied the front bedroom on the second floor, and had retired early in the evening of January 14th. She was awakened about 2:45 A. M. and detected the presence of the defendant. She aroused her husband, and as he did not possess a weapon, she called to his assistance a next door neighbor, John T. Truitt. Truitt came over the porch roof into the Hoopes bedroom, armed with a .25 calibre pistol, and went to the closet door in the second floor hallway. Hoopes was behind Truitt, and Mrs. Hoopes followed both men. Opening the door to the closet, he saw defendant, and immediately there was an exchange of shots, in which the defendant was wounded. Truitt then drew back out of the line of fire. Defendant extended his arm from the closet, pistol pointed in the direction of the front bedroom where Mrs. Hoopes was standing, and fired again. A bullet struck Mrs. Hoopes, entered her breast and went through her body. She fell at the foot of the bed within a few feet of the front window, and died before reaching the hospital.

The defendant made his escape from the house, but after a few hours was apprehended and arrested in Chester. Upon discovery that he was wounded, he was taken to Chester Hospital. Subsequently, he accompanied officers to the scene of the crime and retraced in detail his movements before and after the killing. A right-hand leather glove was found in the house, and when the officers apprehended defendant, he had the mate to it in his possession. He led the officers to the place where he had thrown the revolver on the night of the shooting, and they recovered it.

A bullet from defendant's revolver was found on the floor of the front bedroom in which Mrs. Hoopes was

standing at the time she was shot. This was a .38 calibre bullet and was not flattened by being stopped in its flight. There was considerable evidence accounting for the bullets fired both by defendant and Truitt, which it is not necessary to discuss in detail.

It is assigned as error that the trial judge made it appear that it was a bullet from the defendant's gun which caused the death of Mrs. Hoopes. The complaint is made that he charged the jury that the bullet found on the floor after the shooting, near where the body lay, was a larger one than the bullet fired from the Truitt revolver, and finally, that "the doctor testified that Mrs. Hoopes died from *this gunshot wound.*" Further, defendant complains that the trial judge did not adequately present to the jury the evidence in support of his contention that the bullet which killed Mrs. Hoopes was fired from Truitt's pistol, but reviewed at greater length and with emphasis the evidence supporting the opposite theory of the Commonwealth. There were no objections made to this instruction at the conclusion of the charge, even though the court inquired of counsel, "Is there any mistake you want me to correct while the jury is here?" nor was it assigned as a reason in the court below in the argument for a new trial. However, when the statement complained of is read with the preceding portion of his charge, it is clear that the trial judge did not intend to, and in fact, did not convey the impression that the doctor had testified the decedent died from a gunshot wound inflicted by any particular bullet or pistol. An examination of the charge in its entirety discloses very careful instruction that the jury must be satisfied beyond a reasonable doubt that the defendant's shot caused the death. The charge must be read as a whole and excerpts therefrom must be read in relation to the context. It cannot properly be separated into parts and these treated piecemeal: *Com. v. Welch,* 291 Pa. 40; *Com. v. Touri,* 295 Pa. 50; *Com. v. Bryson,* 276 Pa. 566, 571. This question was properly left to the jury, and we cannot hold that

there was any misstatement or erroneous impression given to the jury by this part of the charge. The record shows that there was ample evidence to justify the jury in finding that it was a bullet from defendant's pistol which killed the deceased.

At the trial the Commonwealth placed in evidence the records of eight prior convictions of the defendant for burglary, in all of which instances he had pleaded guilty and had been sentenced. The trial judge in instructing the jury as to the use they might make of this evidence, charged in the most careful manner that it was to be considered only for the purpose of fixing the penalty at death or life imprisonment in case they should find the defendant guilty of murder in the first degree. But defendant now complains that the trial judge should have instructed the jury that the pleas of guilty in these prior convictions should be considered as mitigating circumstances because the defendant did not then falsify to the court; that reversible error was committed when he instructed: "the plea of guilty of this defendant, of these offenses, is just the same as if he had pleaded not guilty and had been convicted." The evidence of these convictions was presented to show that the defendant was an habitual offender against society, who regularly engaged in crimes of violence for mercenary purposes. It was, therefore, the fact of his conviction which was of importance. The mode of conviction whether by plea of guilty, or trial before a jury, was a matter of no moment. The use of these records at trial was limited by the trial judge to the purposes intended by the Act of May 14, 1925, P. L. 759, 18 PS 2222, and in conformity with the principles laid down in the recent decisions of this court in the following cases: *Com. v. Harris,* 314 Pa. 81, 82; See *Com. v. Stabinsky,* 313 Pa. 231; *Com. v. Kurutz,* 312 Pa. 343; *Com. v. Williams,* 307 Pa. 134; *Com. v. Flood,* 302 Pa. 190; *Com. v. Dague,* 302 Pa. 13; *Com. v. Quaranta,* 295 Pa. 264; *Com. v. Mellor,* 294 Pa. 339; *Com. v.*

*Parker,* 294 Pa. 144; *Com. v. Dorst,* 285 Pa. 232. We see no error in this instruction.

It is also contended that the jury abused its discretion in fixing the penalty at death. The defendant intentionally armed himself with a dangerous weapon and proceeded to decedent's home with the intention of committing a robbery. Though the killing might not have been deliberately planned, the likelihood of its occurrence was unquestionably contemplated and callously ignored by the defendant, who most certainly intended to commit a crime which he knew might result in wounding or death. It may be said that in nearly every case of robbery, the death of the victim was not planned by the participants, in fact, in many it is a result which the perpetrators particularly attempt to avoid. Nevertheless, a killing in the perpetration of such an act has been termed by the legislature murder in the first degree: *Com. v. Sterling,* 314 Pa. 76, 80. The facts substantiate the jury's finding that the deceased was killed by a bullet fired by the defendant. The jury has sentenced him to death. This court will not arbitrarily substitute its judgment for that of the jury, even if it had the power to do so: *Com. v. Harris,* supra.

Our careful examination of the record, and consideration of all the assignments of error in the light of the argument of counsel, lead us to the conclusion that the defendant received a fair and impartial trial and that his rights were fully protected by the charge of the trial judge. The evidence discloses all the elements of murder in the first degree and the jury was amply warranted in so finding. Accordingly, all assignments of error are overruled.

Judgment is affirmed, and the record is remitted to the court below for the purpose of execution.