Commonwealth *v.* Guida, Appellant.

Argued January 20, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Frank J. Marolla, Jr.,* with him *Angelo L. Scarica-mazza* and *Thomas D. McBride,* for appellant.

*John A. Boyle,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY MR. JUSTICE PARKER, March 24, 1941:

Guiseppe Guida was indicted with others for the murder of Winifred Flannery at Lenox Apartments in Philadelphia on May 16, 1935. Guida was convicted of first degree murder with penalty of life imprisonment and sentenced. He has appealed to this court raising

a question as to the sufficiency of the evidence to sustain the verdict and, more particularly, contending that unintentional death occurring in an *attempted* perpetration of a robbery is not murder.

Several weeks prior to the killing, this defendant visited John Lagana and Sam Ruggeri, co-defendants in the indictment, at a market in Washington, D. C., and asked them if they would be interested in making a large sum of money in Philadelphia. They showed interest and several days later appellant and appellant's alleged common law wife again saw Lagana and Ruggeri, and appellant explained that he had information concerning one Morrison, a retired naval officer, who kept large sums of money in a secret compartment in a chest of drawers in his rooms in Lenox Apartments and that this man would be an easy victim.

On May 15, 1935, Lagana, his brother-in-law, Ruggeri, Lagana's wife, appellant and his wife drove to Philadelphia in appellant's car. They stopped at a restaurant near Rittenhouse Square that afternoon and Mrs. Guida made a telephone call. On leaving the restaurant, Guida advised Ruggeri and Lagana that the job was not ready and that they would have to wait until the next day. That evening the five registered at a hotel under fictitious names. The three men met in one room and discussed for several hours plans for obtaining the money. Later appellant informed Lagana and Ruggeri that Morrison and one Esther Smith, who was a frequenter of his apartment, would be in Morrison's apartment and the Smith girl would have Morrison in such condition that they would not have any trouble in tying him and binding him with some tape. The Smith girl was to allow them to bind her. The appellant produced and delivered to Lagana and Ruggeri adhesive tape to be used to tape the mouths of Mr. Morrison and Esther Smith. Tape of a similar kind was found in the apartment.

Later they learned that Morrison was going on a fishing trip and that no one would be in the apartment that day but that the door of the apartment would probably be unlocked. Lagana and Ruggeri were to go to the apartment and the appellant was to keep watch outside. All five checked out of the hotel and drove to the apartment house. Lagana and Ruggeri went into the apartment house and appellant remained outside as a lookout while the two women remained in the car. Lagana and Ruggeri went to Morrison's apartment, rang the bell and were met at the door by an elderly lady, Miss Flannery, who was housekeeper for Morrison. Ruggeri stepped into the apartment, placed his hand over Miss Flannery's mouth and pushed her before them. They bound her hands and feet, gagged her mouth, and left her on a bed. They ransacked the premises for money but were unable to find any. They left the apartment, joined the others, and drove back to Washington.

About 6:30 P. M., Morrison returned to his apartment and discovered Miss Flannery's body on the bed. He promptly notified the police and coroner. The physician who performed the post mortem examination gave the cause of her death as manual strangulation. Tape was found on the floor near the bed. The main threads of the case were shown by the testimony of Lagana and Ruggeri and by a statement made by appellant after his arrest in March, 1940.

The appellant argues that it is only by the common law that murder is defined in Pennsylvania, that the Criminal Code of March 31, 1860, does not make anything murder that was not murder before *(Com. v. Exler,* 243 Pa. 155, 159, 89 A. 968) but merely defines the degrees of murder; that when the land which now constitutes the Commonwealth of Pennsylvania was settled, an accidental killing was not murder unless it occurred as the proximate result of and during or in connection with the commission of a felony; that a bare attempt

to rob was not then a felony although such attempt had been made a felony by Statute 7 George II, c. 21 (1735) : 4 Blackstone's Commentaries 241; and, therefore, that the necessary ingredients of murder were not proved. We cannot assent either to the conclusion or to all the steps in the argument. We have held again and again that an unintentional homicide in the commission or attempted commission of a felony such as rape, burglary, or robbery was murder at common law: *Com. v. Exler,* supra, p. 159; *Com. v. Morrison,* 266 Pa. 223, 109 A. 878; *Com. v. Lessner,* 274 Pa. 108, 111, 118 A. 24; *Com. v. Harris,* 314 Pa. 81, 84, 171 A. 279; *Com. v. Stelma,* 327 Pa. 317, 321, 192 A. 906; *Com. v. Hall,* 328 Pa. 493, 496, 196 A. 16; *Com. v. Kelly,* 333 Pa. 280, 286, 4 A. 2d 805. The appellant has a heavy burden in endeavoring to sustain his contention.

The appellant loses sight of the theory behind the common law rule which was that if a person killed another in doing or attempting to do another act, and if the act done or attempted to be done was a felony, the killing was murder. There was thus supplied the state of mind called malice which was essential to constitute murder. The malice of the initial offense attaches to whatever else the criminal may do in connection therewith: *Com. v. Lessner,* supra, p. 112. To show that the killing was murder it was competent to show that it was done in the commission of or attempt to commit a felony. The essential ingredient is either the commission of the felony or the attempt to commit a felony and the criterion is not whether the mere attempt to commit the felony is of itself, as a distinct crime, a felony or a misdemeanor. It is not the successful completion of the robbery by securing the money or property that imperils human life, but the attack that results in death.

Logically, therefore, the common law rule made the killing murder whether it was done in the actual perpetration of a completed felony or only in the attempt to commit the felony. We see no reason to revise our

former declarations on this subject. We do not mean to assent to the claim of appellant that an attempt to commit robbery was not a felony. In this connection we call attention to the fact that assault with intent to rob was made a felony by § 102 of the Criminal Code of 1860 (18 PS § 2891).

Our statute, which provides that "all murder . . . which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary or kidnapping, shall be deemed murder in the first degree" (Act of March 31, 1860, P. L. 382, § 74, as amended; 18 PS § 2221), by implication recognizes that the essential is not the completion of the robbery, rape, etc., but murder may be present in an attempted robbery, rape, etc. It scarcely seems possible that the legislature would have made murder in the course of an *attempt* to commit robbery murder in the first degree if killing in an *attempt* to commit robbery was not murder in any degree. It is a recognition by implication of the principle to which we adhere.

In compliance with the duty prescribed by the Act of February 15, 1870, P. L. 15 (19 PS § 1187), we have reviewed both the law and the evidence and are convinced that all the ingredients necessary to constitute murder in the first degree have been proved to exist. The connection of the defendant with the crime was shown by the testimony of the co-defendants and the confession of the defendant made immediately after arrest, corroborated by other circumstances. The defendant took the stand and denied the confession and much of the testimony of his co-defendants, but if there was any doubt as to the safety of receiving the testimony of the other conspirators it was removed by the defendant's own direct testimony and cross-examination. We do not believe that a reasonable mind could come to any other conclusion than that the defendant was guilty as indicted. Guida provided the tape to be used in quieting the victims. This demonstrated that he anticipated the

possibility of a struggle and an assault when Lagana and Ruggeri entered the apartment and that he prepared them for it. It makes no difference that Guida and the other conspirators could not know in advance the precise course of events that would follow when they attempted to complete their evil designs.

Judgment affirmed.