No. 47,542

STATE OF KANSAS, *Appellant*, v. ROBERT MAULDIN, *Appellee.*

(529 P. 2d 124)

Opinion filed December 7, 1974.

*Nick A. Tomasic,* District Attorney, argued the cause, and *Vern Miller,* Attorney General, was with him on the brief for the appellant.

*Jay H. Vader,* of Kansas City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an appeal by the state under K. S. A. 1973 Supp. 22-3602 from an order dismissing a charge by information of felony murder (K. S. A. 1973 Supp. 21-3401). The question posed is one of first impression in this jurisdiction.

Omitting formalities the information reads as follows:

". . . [O]n or about the 27th day of November, 1973 one Robert Mauldin, did maliciously and willfully kill and murder a certain Gary McCallon, while in the perpetration or attempt to perpetrate the crime of selling, administering, delivering, distributing or dispensing any opiates, opium, or narcotic drugs, a felony as defined by 1973 Session Laws, Chapter 259, House Bill No. IIII, contrary to K. S. A. 21-3401, Penalty Section 21-4501 A. Contrary to the statute in such case made and provided."

Our statute defining murder in the first degree reads as follows:

"Murder in the first degree. Murder in the first degree is the killing of a human being committed maliciously, willfully, deliberately and with premeditation or committed in the perpetration or attempt to perpetrate any felony [K. S. A. 1973 Supp. 21-3401]."

Defendant filed a motion to dismiss taking the position that the deceased was not killed nor did he die while the defendant was alleged to have been perpetrating or attempting to perpetrate a felony.

The trial judge filed a well-reasoned memorandum decision setting forth the facts and thoroughly analyzing and discussing all of the issues and the cases from other jurisdictions cited by both parties. We believe the trial court's ruling was entirely correct. Therefore, we shall quote its memorandum decision in full:

"The defendant's motion to dismiss was argued to the court on March 22, 1974, and was taken under advisement. I have now reviewed the file and considered the briefs and arguments of counsel.

"The State contends that the evidence in this case will show that on the evening of November 27, 1974, Steve Cottrell and Gary McCallon purchased a quantity of heroin from the defendant Robert Maudlin. Thereafter, Steve and Gary went to Steve's apartment where Gary prepared and injected himself with a shot of the heroin. He subsequently died from an overdose. For the purpose of this motion, these facts must be accepted as true. The question presented, then, is whether the death of Gary McCallon under these circumstances was 'the killing of a human being. . . . committed in the perpetration. . . . of any felony', within the meaning of K. S. A. 21-3401.

"The question has not been decided in this state. There is precedent from other states, however, although it is not in accord. California holds that the sole act of selling or furnishing a dangerous drug to one who dies as a result of an overdose of such drug constitutes a felony-murder. (People vs Cine, 75 Cal. Repts. 459, Ct. Appeals 4th. Dist. 1969). New York, Pennsylvania and Arizona hold to the contrary. (People vs Pickney, 328 N.Y. Supp 2d 550-1972; State vs Dixon, 511 P. 2d 623, Ariz.-1973; Commonwealth vs Bowden, 309 Atl. 2d 714, Pa.-1973).

"This difference results primarily from a difference of opinion as to what constitutes a homicide committed in the perpetration or attempts to perpetrate a felony. Our court has defined this to mean that there must be 'a direct causal relation between the commission of the felony and the homicide.' (State v. Moffitt, 199 Kan. 514, 1. c. 534.)

"The State relies rather strongly herein on the ruling in State vs Moffit. The facts in that case were that the defendant, a convicted felon, fired a pistol while assaulting two pedestrians and inadvertently killed a woman sitting on a motorcycle some distance down the street. The court held that the possession of a pistol after conviction of a felony was a felony (K. S. A. 21-2611) and was inherently dangerous to human life, and that there was a direct causal relation between the commission of such felony and the homicide. It further held that it was no defense to the felony murder that the defendant did not intend to kill the victim.

"I have no quarrel with this reasoning. It is to be noted, however, that possession of a pistol by a convicted felon is a continuing offense. The court cited with approval from the case of People vs Ford, 388 P. 2d. 892 Cal.-1964 in which that court speaking of such possession said:

" 'These later crimes are continuing ones, and were still in the process of being committed when the killing of the officer took place.'

"It should be further noted that even more directly related to the homicide than mere possession of the pistol was the fact that Moffit fired the pistol at

two pedestrians in the perpetration of a felonious assault upon them. Thus direct casual relation was not dependent upon the concept of an illegal possession of a gun.

"In the case before me, the defendant's only connection with the homicide was that he sold a quantity of heroin to the deceased who some time later, voluntarily and out of the presence of the defendant, injected himself with an overdose and died as a result. This is not a case where the defendant injected the heroin into the deceased, or otherwise determined the amount of the dose, or assisted in administering the dosage, where different considerations are involved. (See: People v. Crusiani, 334 N. Y. S. 2d. 515-1972; People vs Poindexter, 330 P. 2d. 763, Cal-1958).

"Under the State's theory, the time element, or other conduct subsequent to or preceding the sale, are not necessarily relevant if death results from use of the drug. It is felony-murder whether the victim injected himself a few hours later, as here, or a few days later, or whether the purchaser sold or furnished the drug to another who took the overdose. The result is the controlling factor.

"The objective of deterring the sale and use of heroin is, of course, very desirable, but an objective in itself does not justify a rule that is otherwise unsound. For example, there are many drugs other than heroin which are inherently dangerous if taken in excess. It is not only a felony to sell such drugs but to manufacture, prescribe, administer, deliver, distribute, dispense or compound these substances. (Uniform Controlled Substances Act, K. S. A. 65-4101 et seq.) It is also becoming increasingly accepted that alcohol can be addictive and inherently dangerous as many drug. (K. S. A. 65-4001 et seq.; Time, April 22, 1974, Alcoholism). The State regulates the sale and use of many things other than drugs, liquor and firearms in the interest of the public welfare and safety. Any one of these transactions could conceivably be encompassed under the State's theory where death resulted from the use of a controlled item. Such a drastic extension of the felony-murder rule by judicial decree is unwarranted, in my opinion.

"What then, constitutes 'a direct casual relation' within the meaning of the felony-murder rule? It seems to me that something more is required beyond the fact the death sequentially followed the sale of the heroin. I have not found, nor has counsel cited, a ruling by our Supreme Court on this precise point, but it has been discussed elsewhere. (Commonwealth vs Root, 170 A. 2d. 310, Pa-1961; Commonwealth vs Redline, 137 A. 2d, 472, Pa-1958; People vs Scott, 185 N. W. 2d 576, Mich-1971; People vs Morris, 274 N. E. 2d 898, Ill.-1971; Sheriff vs Hicks, 506 P. 2d 766, Nev.-1973).

"These cases hold in principal that there must be a closer and more direct casual connection between criminal conduct and a homicide than is required by the tort concept of proximate cause, and that to convict of felony-murder it must be shown that the conduct causing the death was done while in the commission of a felony or in furtherance of the design to commit the felony. I believe State v. Moffit supports this view. In the case before me, the felony involved was the sale of heroin, and it was completed upon consummation of the sale.

"In conclusion, it is my opinion that the better reasoning supports the New

York, Pennsylvania and Arizona cases. If the rule is to be broadened it should be done by the legislature.

"The defendant's motion to dismiss the charge of a felony murder in this case is, therefore, sustained effective 5 days from this date. Please present an approved journal entry for my signature."

On appeal the state reasserts the same contentions presented to the trial court and cites many of the cases discussed in the court's memorandum. We deem it unnecessary to reconsider matters fully covered by the trial court in its memorandum.

We would note that on the facts presented here the sole act of defendant was selling the heroin. The injection by the purchaser was out of the presence of defendant. In the California cases, cited by the state, the accused actively participated in administering the drugs as in *People v. Poindexter*, 51 Cal. 2d 142, 330 P. 2d 763, or at least was present while the purchaser consumed an overdose of narcotic tablets as in *People v. Cline*, 270 C. A. 2d 328, 75 Cal. Rptr. 459, 32 A. L. R. 3d 582.

Even though the Arizona felony murder statute was said to have been adopted almost verbatim from California, the Supreme Court of Arizona declined to follow California decisions in the case of *State v. Dixon*, 109 Ariz. 441, 511 P. 2d 623, wherein the Arizona court said:

"It is our opinion that if the cited statute is to be broadened, it should be done by the legislature and not by a tortured interpretation by this Court. . . ." (p. 443.)

The holding of the Arizona court in *Dixon* is in line with decisions in most of the other jurisdictions wherein the question has been considered. (See cases collected in 32 A. L. R. 3d Anno., commencing at page 589.)

Our statute explicitly requires that the killing be "committed in the perpetration or attempt to perpetrate any felony." Under the facts presented in the instant case the commission of the felony (the act of selling heroin) completely terminated when the seller and the purchaser parted company. As pointed out by the trial court, this is not a case such as *State v. Moffitt*, 199 Kan. 514, 431 P. 2d 879, wherein the felony relied upon (possession of a pistol after conviction of a felony) was a continuing one.

It is a long established rule in this jurisdiction that penal statutes must be strictly construed against the state. (*State v. Bishop*, 215 Kan. 481, 524 P. 2d 712; *State v. Finley*, 199 Kan. 615, 433 P. 2d 414; and *State v. Jensen*, 197 Kan. 427, 417 P. 2d 273.) In *State, ex rel.,*

*v. American Savings Stamp Co.* 194 Kan. 297, 398 P. 2d 1011, we said:

"It is a fundamental rule that penal statutes must be strictly construed in favor of the persons sought to be subjected to their operations. . . . The rule of strict construction simply means that ordinary words are to be given their ordinary meaning. . . . Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. . . ." (p. 300.)

The clear import of the language of the statute cannot be broadened so as to encompass felony murder upon the facts presented herein.

The judgment is affirmed.