No. 60,801

STATE OF KANSAS, *Appellant*, v. THAI DO HOANG, *Appellee*.

(755 P.2d 7)

Opinion filed April 29, 1988.

*Mona Furst*, assistant district attorney, argued the cause, and *Byron L. Sloan*, assistant district attorney, *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellant.

*Benjamin C. Wood*, chief appellate defender, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal by the State from the dismissal of a complaint (K.S.A. 1987 Supp. 22-3602[b][1]). At issue is the propriety of the district court's dismissal based on its determination that the first-degree felony-murder statute (K.S.A. 21-3401) does not apply where the individuals accidentally killed during the commission of the felony of arson are accomplices of the individual charged with felony murder.

For the purposes of this appeal, the facts may be summarized as follows. A Vietnamese woman hired defendant Thai Do Hoang to burn down a building in Wichita which housed a restaurant/club business. The arson fee was to be $1,000, payable $500 in advance and the balance upon performance. Neither the owner of the building nor the operators of the business therein had given permission to defendant or anyone else to burn the building. Defendant hired three assistants, Dung Anh Tran, Thuong Nguyen, and a man known only as Soubong. The four men arrived at the building sometime between 3:00 a.m. and 4:00 a.m. on October 8, 1986. Defendant broke out one of the building's windows and Dung and Thuong crawled through to the building's interior. Defendant handed two containers of gasoline through the window to his cohorts but remained outside

with Soubong. Defendant then saw flames and smoke in the building and waited for his accomplices to return to the window. The fire department arrived at approximately 5:00 a.m. Defendant and Soubong left upon hearing the approaching sirens.

The badly burned body of Dung was found in the building. Thuong was found in serious condition therein and died the next day, apparently from smoke inhalation. Burn, char, and pour patterns, as well as gasoline cans, gasoline, and timing-delay devices at the fire's point of origin established the arson causation. The defendant was arrested the following day with $500 in one pocket and $111 in another pocket. After being advised of his *Miranda* rights, defendant essentially confessed to participating in the burglary/arson but denied the act was done for money. He was subsequently charged with two counts of felony murder pursuant to K.S.A. 21-3401, and one count each of burglary (K.S.A. 21-3715) and arson (K.S.A. 21-3718).

At the close of the preliminary hearing, held on October 21, 1986, defendant's trial counsel moved for dismissal of the two felony-murder counts. The judge presiding therein ruled that Kansas law allowed the defendant to be prosecuted for the deaths of his accomplices, and bound him over for trial on all counts. A renewed motion to dismiss these same counts was granted on April 7, 1987. The State, on April 8, 1987, moved the district court to dismiss the other two counts in order to effectuate its appeal herein pursuant to K.S.A. 1986 Supp. 22-3602(b)(1). See *State v. Freeman*, 234 Kan. 278, 670 P.2d 1365 (1983), relative to the reason for such action. The motion was sustained on April 21, 1987. This appeal by the prosecution resulted.

The issue before us is whether the district court properly construed K.S.A. 21-3401 to exclude the felony-murder charges against the defendant under the facts herein.

The felony-murder statute, K.S.A. 21-3401, provides:

"Murder in the first degree is the killing of a human being committed maliciously, willfully, deliberately and with premeditation or committed in the perpetration or attempt to perpetrate any felony."

Although we have never decided the precise issue before us, we have established considerable case law on felony murder. A review of these principles is appropriate.

In felony-murder cases, the elements of malice, deliberation,

and premeditation which are required for murder in the first degree are deemed to be supplied by felonious conduct alone if a homicide results. To support a conviction for felony murder, all that is required is to prove that a felony was being committed, which felony was inherently dangerous to human life, and that the homicide which followed was a direct result of the commission of that felony. In a felony-murder case, evidence of who the triggerman is is irrelevant and all participants are principals. *State v. Thomas*, 239 Kan. 457, 461-62, 720 P.2d 1059 (1986); *State v. Myrick & Nelms*, 228 Kan. 406, 416, 616 P.2d 1066 (1980); *State v. Underwood*, 228 Kan. 294, 302, 615 P.2d 153 (1980); *State v. Reed*, 214 Kan. 562, 564, 520 P.2d 1314 (1974).

The purpose of the felony-murder doctrine is to deter all those engaged in felonies from killing negligently or accidentally. *State v. Brantley*, 236 Kan. 379, 380-81, 691 P.2d 26 (1984). Whether a felony is inherently dangerous to human life must be determined when considered in the abstract only. *State v. Lashley*, 233 Kan. 620, 634, 664 P.2d 1358 (1983); *State v. Underwood*, 228 Kan. at 306. See *State v. Strauch*, 239 Kan. 203, 216, 718 P.2d 613 (1986). Moreover, the underlying felony in a felony-murder case must be a forcible felony, one inherently dangerous to human life. *State v. Strauch*, 239 Kan. at 216; *State v. Lashley*, 233 Kan. at 632; *State v. Underwood*, 228 Kan. at 305-06. K.S.A. 21-3110(8) includes arson in its definition describing a forcible felony. It is uncontroverted herein that arson is a felony which is inherently dangerous to human life.

In *State v. Branch and Bussey*, 223 Kan. 381, Syl. ¶ 1, 573 P.2d 1041 (1978), we said:

"Any participant in a life-endangering felony is guilty of first degree murder when a life is taken in the course of committing or attempting to commit a felony, regardless of whether the death was intentional or accidental."

There, during the aggravated robbery of a drug dealer, Branch made advances toward the drug dealer's girlfriend. A struggle ensued, during which Bussey shot and killed the drug dealer. On appeal, defendants argued they could not be found guilty of murder because the killing was accidental. We rejected this argument, reasoning:

"To apply the felony murder rule, it is only necessary to establish that defendants

committed a felony inherently dangerous to human life and that the killing took place during the commission of the felony. (*State v. Guebara*, 220 Kan. 520, 523, 553 P.2d 296; *State v. Goodseal*, 220 Kan. 487, 553 P.2d 279.) A requirement of the felony murder rule is the fact the participants in the felony could reasonably foresee or expect that a life might be taken in the perpetration of such felony. If applied to the facts of the present case, defendants are subject to the felony murder rule and it makes no difference that the killing was accidental.

". . . In a felony inherently dangerous to life the intent to accomplish the initial felony is transformed into malice and premeditation upon the death of a human being and the felon is guilty of first degree murder. Despite defendants' argument that the result is harsh, it is one which society imposes upon those who commit such crimes knowing full well the possible tragic results." 223 Kan. at 382-83.

The statutory history of the felony-murder doctrine in Kansas began with the territorial government in 1855. Kan. Terr. Stat. 1855, ch. 48, § 1. *Smith v. State*, 8 Kan. App. 2d 684, 666 P.2d 730 (1983), *rev. denied* 234 Kan. 1077 (1983). See Note, *Felony Murder in Kansas*, 26 Kan. L. Rev. 145, 147 (1977).

The territorial statute, which remained virtually unchanged until 1969, provided as follows:

"Every murder which shall be committed by means of poison or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or an attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed murder in the first degree."

Kan. Terr. Stat. 1855, ch. 48, § 1(a); G.S. 1868, ch. 31, § 6; G.S. 1915, ch. 28, § 3367; R.S. 1923, 21-401; K.S.A. 21-401 (Corrick).

In 1969, the Kansas Legislature adopted the new criminal code, replacing K.S.A. 21-401 (Corrick) with K.S.A. 21-3401. L. 1969, ch. 180, § 21-3401. In so doing, the revised statute eliminated the enumeration of felonies which specifically gave rise to the application of the felony-murder doctrine. In 1972, K.S.A. 21-3401 was amended to its present form which provides that murder in the first degree is "the killing of a human being . . . in the perpetration or attempt to perpetrate any felony." L. 1972, ch. 112, § 1.

Neither the term "killing" nor the term "human being" was given any special meaning by the legislature. The term "killing," which replaced the term "murder" under the prior statute, is defined as "the act of one that kills" and "that kills or relates to killing." Webster's New Collegiate Dictionary 634 (5th ed.

1977). Webster's Third New International Dictionary 1242 (1961) defines "killing" as "the act of one that kills" and "having the effect of killing." The term "killing" is a broader term than "murder." Thus, there is no statutory history evincing an intention to restrict the crime of felony murder in Kansas. Ten years have elapsed since our decision in *State v. Branch and Bussey*, 223 Kan. 381. Presumably the legislature is satisfied with that decision which held that an accidental killing was within the felony-murder statute.

Although not really germane to the issue before us, for completeness, *State v. Mauldin*, 215 Kan. 956, 529 P.2d 124 (1974), should be mentioned. In *Mauldin*, defendant sold heroin to the victim, who later injected himself and died as a result thereof. We held this conduct was not within the purview of the felony-murder statute, reasoning:

"Our statute explicitly requires that the killing be 'committed in the perpetration or attempt to perpetrate any felony.' Under the facts presented in the instant case the commission of the felony (the act of selling heroin) completely terminated when the seller and the purchaser parted company." 215 Kan. at 959.

Further, in *State v. Murrell*, 224 Kan. 689, 585 P.2d 1017 (1978), a defendant had been charged, *inter alia*, with the felony murder of his co-felon. The accomplice had been shot by the robbery victim in returning the defendant's gunfire. The defendant was acquitted of felony murder. 224 Kan. at 690. The felony-murder issue was not appealed; therefore, this court was not provided an opportunity to address the issue of a felony-murder charge predicated upon the death of an accomplice.

The doctrine of felony murder can certainly reach some harsh results in particular factual situations. For this reason it has been much discussed and restricted in some jurisdictions. See 13 A.L.R.4th 1226 and cases cited therein. Connecticut (Conn. Gen. Stat. § 53a-54c [1985]); New Jersey (N.J. Stat. Ann. § 2C: 11-3a[3] [West 1987 Supp.]); and New York (N.Y. Penal Law § 125.25[3] [McKinney 1987]) have, by legislative amendment, modified or eliminated deaths of co-felons from felony murder. A review of the case law of other jurisdictions is not particularly helpful herein by virtue of the wide variety of the statutory language employed in the definitions of felony murder.

Missouri and Pennsylvania case law is rather significant,

however. In an early Kansas case dealing with first-degree murder, we said, in dicta, that our first-degree murder statute was probably taken from an identical Missouri statute which, in turn, was similar to the Pennsylvania statute. See *State v. Keleher*, 74 Kan. 631, 635, 87 Pac. 738 (1906). We accepted this determination in *State v. Moffitt*, 199 Kan. 514, 531, 431 P.2d 879 (1967), *overruled on other grounds State v. Underwood*, 228 Kan. 294. The supreme courts of Missouri and Pennsylvania have held a defendant liable for his co-felon's death in circumstances directly on point with the case herein. See *State v. Baker*, 607 S.W.2d 153 (Mo. 1980), and *Commonwealth v. Bolish*, 391 Pa. 550, 138 A.2d 447, *cert. denied* 357 U.S. 931 (1958).

In *Commonwealth v. Bolish*, the Pennsylvania Supreme Court explained:

"The main contention of defendant is that the felony-murder doctrine does not apply to the death of an accomplice resulting from the accomplice's own act in the perpetration of arson. But, the fallacy in this contention lies in the disregard of defendant's active participation in the arson of which the killing was a direct result. As we heretofore pointed out, defendant was present at the time of the commission of the crime of arson and the resulting explosion. Thus he was actively participating in the felony which resulted in death. The element of malice, present in the design of defendant, necessarily must be imputed to the resulting killing, and made him responsible for the death. This defendant's position is no different than that of the defendant in *Commonwealth v. Thompson*, 321 Pa. 327, 184 A. 97; *Commonwealth v. Guida*, 341 Pa. 305, 19 A. 2d 98, and countless other cases wherein the death resulted, directly from the perpetration of the felony. The fact that the victim was an accomplice does not alter the situation, since the act which caused his death was in furtherance of the felony." 391 Pa. at 553.

It is argued in the case before us that felony murder applies only to the deaths of "innocents" rather than co-felons. There is nothing in our statute on which to base such a distinction. For convenience, K.S.A. 21-3401 is iterated as follows:

"*Murder in the first degree is the killing of a human being* committed maliciously, willfully, deliberately and with premeditation or *committed in the perpetration or attempt to perpetrate any felony*". (Emphasis supplied.)

"Penal statutes must be strictly construed in favor of the persons sought to be subjected to them. The rule of strict construction simply means ordinary words are to be given their ordinary meaning. The statute should not be read to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it." *State v. Dubish*, 234 Kan. 708, 712, 675 P.2d 877 (1984).

Dung and Thuong, the decedents herein, were human beings who were killed in the perpetration of a felony (a felony inherently dangerous to human life, as previously discussed). Defendant was an active participant in the felony and present on the scene during all pertinent times. There is nothing in the statute excluding the killing of the co-felons herein from its application. For this court to exclude the co-felons would constitute judicial amendment of a statute on philosophic rather than legal grounds. This would be highly improper. The legislature has defined felony murder. If this definition is to be amended to exclude the killing of co-felons therefrom under circumstances such as are before us, it is up to the legislature to make such an amendment.

The judgment dismissing the complaint is reversed and the case is remanded for further proceedings.

LOCKETT, J., dissenting: I respectfully dissent from the majority's conclusion that felony murder, as defined in K.S.A. 21-3401, includes the accidental death of a co-felon in its application.

The felony-murder statute, K.S.A. 21-3401, provides:

"Murder in the first degree is the killing of a human being committed maliciously, willfully, deliberately and with premeditation or *committed in the perpetration or attempt to perpetrate any felony.*"

In the past, the felony-murder rule applied only to the deaths of innocents and not to the deaths of co-felons. The majority quotes *State v. Dubish*, 234 Kan. 708, 712, 675 P.2d 877 (1984), and then strictly construes the statute against the person at whom it is directed. *Dubish* is not authority for construing the statute in this manner, but authority for the opposite constitutional interpretation of the statute. *Dubish* requires that K.S.A. 21-3401 be strictly construed in favor of the person at whom it is directed, the defendant, Hoang.

Still following *Dubish*, the majority states that strict construction means simply that ordinary words are to be given their ordinary meaning. Further, it is stated that a statute should not be read to add that "which is not readily found therein or to read out what as a matter of ordinary English language is in it."

The majority's literal interpretation of the "ordinary English" of the felony-murder statute ignores prior decisions of this court

which have construed the same felony-murder statute. We have held, for example, that the underlying felony in a felony-murder case must be a forcible felony, one inherently dangerous to human life, and that whether a felony is inherently dangerous to human life must be determined when considered in the abstract only. *State v. Lashley*, 233 Kan. 620, 632, 634, 664 P.2d 1358 (1983). Clearly, there is no such literal limitation contained within the legislature's statement of the law. In *Lashley*, the majority obviously did not feel that philosophical amendment by the court was an improper judicial amendment of the statute.

The majority agrees that its literal interpretation of the statute can certainly produce some harsh results. For example, while studying in a college dorm, three students, A, B, and C, decide to steal beer from C's father's garage. C tells A and B, "The beer is in the garage, just open the door." A and B drive to C's house. A gets out of the car and lifts the garage door. C's father hears burglar A and chases after him. While attempting to get to B's car, A is hit and killed by a car that ran a red light. Under the majority's literal interpretation of the statute, B and C could be charged with felony murder because A was killed during the commission of a felony.

This result is contrary to legislative intent. When the interpretation of a statute according to the exact and literal import of its words would thwart or contravene the manifest purpose of the legislature in its enactment, the statute should be construed according to its spirit and reason, disregarding, as far as may be necessary, the strict letter of the law. *Clark v. Murray*, 141 Kan. 533, 41 P.2d 1042 (1935). If harsh results were not the intent of the legislature, this court should determine the legislative policy and purpose of the statute.

PRAGER, C.J., and ALLEGRUCCI, J., join the foregoing dissenting opinion.