Commonwealth ex rel. Hough, Appellant, *v.*
Maroney.

Argued September 30, 1960.   Before JONES, C. J.,
BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Marjorie Hanson Matson,* for appellant.

*William H. Wolf, Jr.,* Assistant District Attorney, with him *Arlen Specter* and *Domenick Vitullo,* Assistant District Attorneys, *Paul M. Chalfin,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY MR. JUSTICE EAGEN, January 16, 1961:

Appellant, by this appeal, challenges the legal correctness of the lower court's action in summarily dismissing his petition for writs of habeas corpus and coram nobis. He is presently under sentence of life imprisonment, after conviction by his own plea of guilty to the charge of murder and the determination by the court that his guilt was that of murder in the first degree.

The crime grew out of an armed robbery in which the appellant and two others, David Almeida and James Smith, actively participated. As they attempted to escape from the scene, an off-duty policeman was shot and killed.

Appellant was apprehended almost immediately and later entered a plea of guilty generally to an indictment charging murder. After a hearing before the court, he was adjudged guilty of murder in the first degree and sentenced to death. Upon appeal, the judgment of conviction and sentence was affirmed: *Commonwealth v. Hough,* 358 Pa. 247, 56 A. 2d 84 (1948).

Almeida and Smith were apprehended about a year later in another state and returned to Pennsylvania. After trial by jury, the first mentioned was found

guilty of murder in the first degree, and the penalty was fixed at death. This Court affirmed: *Commonwealth v. Almeida*, 362 Pa. 596, 68 A. 2d 595 (1949). Smith, tried two weeks later, was found guilty by the jury of murder in the first degree and sentenced to life imprisonment. No appeal followed.

Subsequently, Almeida instituted a habeas corpus action in a federal court, alleging for the first time deliberate suppression of material evidence by the Commonwealth. The writ was granted: *U. S. ex rel. Almeida v. Baldi*, 104 F. Supp. 321 (E.D. Pa. 1951), aff'd, 195 F. 2d 815 (1952); cert. den. 345 U. S. 904, reh. den. 345 U. S. 946. The circuit court of appeals stated that, although the question as to who fired the fatal shot was irrelevant to the issue of whether Almeida was or was not guilty of first degree murder, it was relevant as to the penalty to be imposed by the jury at the trial, and that the suppression of evidence, in so far as it bore on this question, violated due process of law under the Fourteenth Amendment. Almeida then entered a guilty plea, was adjudged guilty of murder in the first degree and sentenced to life imprisonment. Appellant's death sentence was commuted to that of life imprisonment on February 24, 1955.

The facts incident to the crime may be summarized as follows: On January 30, 1947, the appellant Hough, with Smith and Almeida, entered a public parking garage in the City of Philadelphia, cowed the attendant with loaded revolvers and threats and stole an automobile, the appellant, for his part, having hit the attendant on the side of the head with a revolver. They then drove in the stolen car to an Acme public superservice market. After parking the car at an angle against the curb, Almeida and Hough entered the market. Both drew loaded revolvers and held everyone at bay while they rifled the cash registers and grabbed money from the hand of a one-armed customer. When

the manager of the store became excited, yelled "hold up," and started to run toward the rear of the store, Almeida fired in his direction, at least one shot which missed and lodged in the ceiling. They ran from the store and jumped into the car, wherein Smith kept vigil at the wheel. There was a crowd of people in the street and Almeida fired a shot into the air as he and Hough ran from the store entrance.

At or about the time the robbers arrived at the supermarket, one Cecil Ingling, employed as a patrolman by the police department of the City of Philadelphia, but on the occasion involved garbed in civilian clothing and off-duty, arrived in his automobile with his family. He also parked his car against the curb in front of the supermarket before alighting to attend to some personal business in the neighborhood. By coincidence, the robbers' car was parked immediately to the left of the Ingling car and in such close proximity thereto that, when the robbers jumped into their car in an effort to escape, the door of the robbers' stolen car, when opened, caught on the side of the Ingling car, and sprung when the power of the car's movement pushed the door backward.

Before the robbers could flee, Ingling rearrived at the scene and grabbed appellant Hough from the rear by the neck as the latter tried to enter the get-a-way car. At or about the time the robbers fled from the supermarket, two police cars arrived at the scene. The policemen scurried from their car and started firing shots into that occupied by the robbers.[1] One of these bullets grazed the forehead of Smith, causing blood to flow therefrom, and, at the time, leading him to believe that he was seriously wounded. Shots were fired from

---

[1] The testimony is conflicting as to whether or not one of these police cars arrived before or after the robbers emerged from the market.

the robbers' car at the apprehending policemen[2] and also in the direction of Ingling. The latter was killed by one bullet wound in the head, as he stood on the street near the door of the robbers' car.

Appellant contends that his guilty plea was entered in the mistaken belief that the fatal shot had been fired by his co-conspirator (Almeida), and that, therefore, a writ of coram nobis should issue. The purpose of such a writ is to correct errors of fact only. Its function "is to bring before the court rendering the judgment matters of fact which, if known at the time the judgment was rendered, would have prevented its rendition": *Commonwealth v. Harris*, 351 Pa. 325, 41 A. 2d 688 (1945). It is argued that, if Ingling were killed by a bullet fired from the gun of a policeman, this would constitute an accidental killing and that, under such circumstances, Hough's conviction of murder could not be sustained, citing *Commonwealth v. Redline*, 391 Pa. 486, 137 A. 2d 472 (1958).

The basic fallacy of the appellant's contention lies in the fact that the felony murder rule laid down in the *Redline* case, supra, which is now the law of Pennsylvania, was not enunciated until 1958, more than ten years after the appellant's conviction and sentence. Under the felony murder rule as it existed in this State at the time of the appellant's plea of guilty to a charge of murder generally, his conviction of murder in the first degree and his ensuing sentence to death, who fired the fatal shot was irrelevant to the guilt of the felonious conspirator so long as it was fired in aid

[2] The policeman in the first police car to arrive said he pulled up immediately to the left of the felons' car at the curb. Instantly a shot came through the window. He jumped out and ran to the front of the car and a second bullet came in his direction. He then fired one shot into the felons' car and two more into the rear thereof as it sped away. Another policeman testified that the defendant fired a shot directly at him as he stood in the street.

of or in resistance to the perpetration of the felony. While the fact as to who fired the fatal shot in the instant case may have been relevant to the question whether the appellant's guilt of murder in the first degree merited life imprisonment or the death penalty (*U. S. ex rel. Almeida v. Baldi,* supra), the death sentence which he originally received was later commuted to life imprisonment so that he has been accorded the most favorable sentence fitting the crime whereof he was duly found guilty. Obviously, therefore, the allegation that the fatal shot was not fired by one of appellant's co-conspirators, even if established, cannot help him.

Order affirmed.