## Commonwealth ex rel. Hough *v.* Maroney, Appellant.

Argued December 2, 1966.   Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Alan J. Davis,* Assistant District Attorney, with him *Michael J. Rotko,* Assistant District Attorney, and *Arlen Specter,* District Attorney, for appellant.

*Marjorie Hanson Matson,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, May 24, 1967:

This is an appeal by the Commonwealth from the Order of the Court of Common Pleas granting Hough's petition for a writ of habeas corpus.

Hough's present petition was filed as a result of the Opinion and decision of United States District Court Judge ROSENBERG sur Hough's petition for a writ of habeas corpus: *United States ex rel. Hough v. Maroney,* 247 F. Supp. 767 (W.D. Pa.). Judge ROSENBERG *mistakenly* believed that this Court (a) had merely passed upon "the degree and justification of the *sentence* which [Hough had] received . . . rather than an attack on the substance of the conviction" and had (b) never passed upon and decided the *merits* of Hough's contention that under the facts and the pertinent principles of law, *he could not* lawfully or Constitutionally have been convicted of murder. "In sum total the records relating to all the Pennsylvania State courts indicate that the question of the validity of the judgment of conviction as affected by false or suppressed evidence never had been placed before them for a determination. . . . This may present a thin thread of difference—but a difference nevertheless." For this reason, Judge ROSENBERG naturally held that Hough had not exhausted his State remedies.

The facts, the issues and the record, as well as the recent decision of the Court of Common Pleas, are very unusual and must be reviewed at great length.

Hough is now serving a sentence of life imprisonment for murder. The killing grew out of an armed robbery by Hough and his two confederates, David Almeida and James Smith, in 1947. The three robbers, while attempting to escape from the scene, engaged in a gun battle with the police, during which an off-duty policeman, Ingling, was shot and killed.*

We deem it wise to state in greater detail the facts concerning the robberies, the murder and the relevant issues. On January 30, 1947, the present relator Hough, with Smith and Almeida, entered a public park-

---

* For further details, see infra.

ing garage in the City of Philadelphia, covered the attendant with loaded revolvers, threatened him, Hough (and Almeida each) robbed a cash register, and then stole an automobile. During the robbery, *Hough hit* the attendant on the side of the head with a revolver. They then drove the stolen car to an Acme public superservice market. After parking the car against the curb, Hough and Almeida entered the market, leaving Smith at the wheel. Both drew loaded revolvers, threatened the attendant, and held everyone at bay, terrorized, while they rifled the cash registers. When the manager of the store became excited, yelled "holdup," and started to run toward the rear of the store, Almeida fired at him. This shot missed. Hough and Almeida then ran from the store and jumped into the stolen car which Smith was driving. There was a crowd of people in the street, and Almeida fired a shot into the air as he and Hough ran from the store entrance. Hough fired a shot directly at one of the policemen* who was only a few yards away but luckily missed him.

At or about the time the robbers arrived at the supermarket, Cecil Ingling, a City patrolman, arrived at the supermarket in his automobile with his family. He was off duty and was in civilian clothes. He also parked his car against the curb in front of the supermarket before alighting to attend to some personal business in the neighborhood. By coincidence, the robbers' car was parked immediately to the left of Ingling's car.

At or about the time the robbers fled from the supermarket, two police cars arrived at the scene and exchanged a fusillade of shots with the robbers, includ-

---

* At the recent habeas corpus hearing before Judge ROSENBERG, at which Hough was the only witness, Hough denied this. It is unnecessary to quote other self-serving and false statements made by Hough at this hearing.

ing shots in the direction of Ingling who had rearrived at the scene. Ingling was killed by a bullet wound in the head while he was attempting to capture Hough who was firing directly at the police.

Hough was apprehended almost immediately, and later, while represented by able and experienced counsel, entered a plea of guilty generally to an indictment charging murder. Defendant's (relator's) guilty plea in open Court while represented by counsel is a confession of guilt of the crime with which he is charged in the indictment: *Com. ex rel. Finnie v. Russell*, 422 Pa. 313, 220 A. 2d 796. A plea of guilty (when accepted and entered by the Court) is the equivalent of a conviction and a verdict of guilty by a jury: *Com. ex rel. Saddler v. Maroney*, 422 Pa. 13, 220 A. 2d 846; *Com. ex rel. Dandy v. Banmiller*, 397 Pa. 312, 155 A. 2d 197. After a hearing before the trial Court which consisted of three Judges, he was adjudged guilty of murder in the first degree and sentenced to death. Upon appeal to this Court, the judgment of conviction and sentence was affirmed by a unanimous Court: *Commonwealth v. Hough*, 358 Pa. 247, 56 A. 2d 84 (1948). Justice (later Chief Justice) JONES, speaking for the Court, said (page 252) : "Notwithstanding that the defendant, under the advice of able counsel, pleaded guilty to the murder for which he was indicted and throughout has conceded that it was murder in the first degree, *we have reviewed both the law and the evidence in the case*,* as we are bidden by statute to do in first degree murder cases (Act of February 15, 1870, P. L. 15, Sec. 2, 19 PS §1187), and *we find the ingredients necessary to constitute murder in the first degree to have been proven to exist*."**

---

* For further details, see infra.

** Italics throughout, ours.

Nevertheless, Hough contends that (1) under the later (10 years later) decision of *Commonwealth v. Redline,* 391 Pa. 486, 137 A. 2d 472 (1958), which expressly overruled two prior decisions of this Court and radically changed the law of felony murder, and (2) in view of the after-discovered evidence that the fatal bullet came from the gun of one of the arresting policemen and not from one of his co-robbers, he was not guilty of and could not have been legally convicted of murder.

Almeida and Smith were apprehended about a year later in another State and returned to Pennsylvania. Thereafter a jury found Almeida guilty of murder in the first degree and sentenced him to death. Hough testified as a witness for the Commonwealth (a) at the coroner's inquest and (b) at Almeida's trial, that Almeida shot and killed Ingling. Hough testified that he was standing alongside of Almeida who was within two feet of Ingling, and that Almeida fired the fatal bullet which killed Ingling, and said "I got the son-of-a-bitch."

We further note that Smith was tried two weeks later. For the first time it appeared that an Assistant District Attorney had deliberately suppressed evidence which indicated that Ingling was killed by a bullet from the gun of one of the arresting police officers. The jury found Smith guilty of murder in the first degree, but probably because of the hitherto suppressed evidence, sentenced him only to life imprisonment. Smith has never taken an appeal or filed any post-conviction petitions.

Thereafter, Almeida (a) appealed his conviction and sentence to the Supreme Court of Pennsylvania, and (b) also filed with us a petition for a new trial. *Almeida contended that certain facts showed that the fatal shot was fired mistakenly by a policeman.* This Court affirmed the trial Judge's charge to the jury:

" '. . . I will charge the jury that it makes no difference who fired the shot, even if a shot was fired by Mrs. Ingling, it was still murder.'

"In his charge the trial Judge said: 'If that [fatal] shot were fired by anyone, even anyone removed from these three participants, and that shot was fired in the perpetration of a robbery, members of the jury, that is murder; that is murder in the first degree. . . . If one or more persons set in motion a chain of circumstances out of which death ensues, those persons must be held responsible for any death which by direct, by almost inevitable sequence, results from such unusual criminal act. . . . So, if the death of Officer Ingling was the inevitable consequence of the unlawful act, or acts, of the defendant, or the continuation of the unlawful act, or acts, of the defendant, acting in concert—for every one who does an unlawful act is considered by the law as the doer of all that follows—if that unlawful act be robbery, and if the result of that act is a killing, members of the jury, that killing is murder.' "

This Court, in a lengthy Opinion of 43 pages, joined in by five Justices and concurred in by one Justice, carefully and thoroughly considered all the facts and the evidence and the law, and affirmed Almeida's conviction of murder in the first degree and sentence of death. Specifically, the Court *rejected* defendant's point for charge below and his contention below and here, that " 'If you find that the bullet which was fired and killed the deceased was not fired by any one of the three men charged with perpetrating the robbery in question, you cannot convict the defendant of murder in the first degree.' " *Commonwealth v. Almeida,* 362 Pa. 596, 68 A. 2d 595 (1949); on November 19, 1949 Almeida's petition for reargument was denied by this Court; certiorari denied, 339 U.S. 924; rehearing denied, 339 U.S. 950.

On May 15, *1950,* Almeida filed a petition for a writ of habeas corpus in the Supreme Court of Pennsylvania (361 Misc. Docket No. 9). This petition again specifically raised the issue of the intentional suppression by the Assistant District Attorney of vital evidence, namely, evidence that the fatal bullet came from the pistol of one of the police officers. After carefully considering this, as well as every other issue, this Court on May 26, 1950 denied Almeida's petition in a Per Curiam Order. Certiorari was denied by the Supreme Court of the United States, 340 U.S. 867.

In *1951,* Almeida filed a petition for habeas corpus in the Federal District Court for the Eastern District of Pennsylvania, once *again contending that there was a deliberate suppression of* material *evidence* by the Commonwealth, namely, the fatal shot was fired by a policeman who was trying to capture the robbers. The writ was granted: *United States ex rel. Almeida v. Baldi,* 104 F. Supp. 321 (E.D. of Pa. 1951), affirmed, 195 F. 2d 815 (1952); cert. den. 345 U.S. 904, rehearing denied 345 U.S. 946.

In *United States ex rel. Almeida v. Baldi,* 195 F. 2d, supra, the Circuit Court of Appeals held that although (1) *the question of who fired the fatal shot was, under the law of Pennsylvania, irrelevant to the issue of whether Almeida was or was not guilty of first degree murder,* (2) *it was pertinent and relevant as to the penalty to be imposed by the jury at the trial,* and (3) *the suppression of evidence, insofar as it bore on the question of penalty, violated due process of law under the Fourteenth Amendment.* That Court[*] pertinently said (pages 819-821): ". . . Who killed Ingling was a relevant issue, as to penalty to be imposed by the jury at the trial, perhaps the most relevant one. Under the Act of June 24, 1939, the jury had the power of life

---

[*] In a very able Opinion by Chief Judge BIGGS.

or death over Almeida. In the court below as in this court the Commonwealth contended that *the question of who fired the fatal shot was irrelevant to the issue of whether Almeida was or was not guilty of first degree murder,* citing the decisions of the Supreme Court of Pennsylvania in Almeida's case* and in the Moyer case.* *With this we agree.* . . .

". . . But even if deliberate suppression of evidence had been alleged the Supreme Court of Pennsylvania by the very terms of the Act of April 22, 1903, 19 P.S. Pa. §861, could not have granted a new trial for under all the evidence, old and new, there can be no doubt that *Almeida was guilty of murder in the first degree*** under the decision of the Supreme Court of Pennsylvania in Almeida's appeal, supra, interpreting its decision in the Moyer case."

Thereafter in *1960,* Hough filed a petition for a writ of error coram nobis *and for a writ of habeas corpus,* seeking a complete discharge from his conviction of and sentence for murder, on the ground of the aforesaid suppression of evidence by the Assistant District Attorney and on the basis of *Commonwealth v. Redline,* 391 Pa., supra. This Court, in a unanimous Opinion, dismissed Hough's petition (1) for a writ of habeas corpus and (2) for a writ of coram nobis: *Commonwealth ex rel. Hough v. Maroney,* 402 Pa. 371, 167 A. 2d 303 (1961); cert. den. 366 U.S. 971. That decision and the Opinion therein which rejected all of Hough's present contentions, controls the instant case. The Court, after briefly reciting the pertinent facts, said (pages 373, 375-376): ". . . The circuit court of appeals stated that, although the question as to who

---

* *Commonwealth v. Almeida,* 362 Pa., supra; *Commonwealth v. Moyer and Byron,* 357 Pa. 181, 53 A. 2d 736.

** On retrial, Almeida pleaded guilty and was sentenced to life imprisonment. See infra.

fired the fatal shot was irrelevant to the issue of whether Almeida was or was not guilty of first degree murder, it was relevant as to the penalty to be imposed by the jury at the trial, and that the suppression of evidence, in so far as it bore on this question, violated due process of law under the Fourteenth Amendment. Almeida then entered a guilty plea, was adjudged guilty of murder in the first degree and sentenced to life imprisonment. Appellant's death sentence was commuted to that of life imprisonment on February 24, 1955.

. . .

". . . It is argued that, if Ingling were killed by a bullet fired from the gun of a policeman, this would constitute an accidental killing and that, under such circumstances, Hough's conviction of murder could not be sustained, citing Commonwealth v. Redline, 391 Pa. 486, 137 A. 2d 472 (1958).

"The basic fallacy of the appellant's contention lies in the fact that the felony murder rule laid down in the Redline case, supra, which is now the law of Pennsylvania, was not enunciated until 1958, more than ten years after the appellant's conviction and sentence. Under the felony murder rule as it existed in this State at the time of the appellant's plea of guilty to a charge of murder generally, his conviction of murder in the first degree and his ensuing sentence to death, *who fired the fatal shot was irrelevant to the guilt** of the felonious conspirator so long as it was fired in aid of or *in resistance* to the perpetration of the felony. While the fact as to who fired the fatal shot in the instant case may have been relevant to the question whether the appellant's guilt of murder in the first degree

---

* In further answer to one of Hough's technical contentions, which we have several times rejected, we may ask: How can a Court approve and affirm a penalty of death in a murder case unless it necessarily first decides that defendant (or relator) was guilty of first degree murder.

merited life imprisonment or the death penalty (U.S. ex rel. Almeida v. Baldi, supra), the death sentence which he originally received was later commuted to life imprisonment so that he has been accorded the most favorable sentence fitting the crime whereof he was duly found guilty. Obviously, therefore, the allegation that the fatal shot was not fired by one of appellant's co-conspirators, even if established, cannot help him.

"Order affirmed."

Once again, the identical issue which is raised in the instant case was raised and again rejected in *Commonwealth ex rel. Almeida v. Rundle*, 409 Pa. 460, 187 A. 2d 266. Once again, this Court reviewed the facts and the law and unanimously rejected all the contentions which Hough is making in the instant case. The Court entered an Order dismissing Almeida's petition for a habeas corpus and in its Opinion said (pages 460, 461- 462) : "This is an appeal from an order in the court below dismissing a petition for a writ of habeas corpus. . . .

"When arraigned before the Court of Oyer and Terminer of Philadelphia County to face trial upon the indictment for the second time (October 28, 1954), *Almeida entered a plea of guilty,* was adjudged guilty of murder in the first degree by the court and sentenced to life imprisonment. No appeal was taken. It is from this sentence and confinement that he seeks his release in this action.

"It appears from the factual background of the case that the victim's death resulted not from a bullet fired by Almeida or one of his co-felons, but rather from a bullet fired from the gun of a fellow policeman of the deceased, who assisted on the scene in attempting to apprehend the criminals.

"When Almeida was convicted of the crime involved, the law of this Commonwealth was that where, in the commission of a felony, such as robbery, *a third person*

*is killed by one resisting the felon* or who is endeavoring to prevent his escape from the scene of the crime, the felon is guilty of murder in the first degree. See, Commonwealth v. Almeida,* supra; Commonwealth v. Moyer & Byron, 357 Pa. 181, 53 A. 2d 736 (1947); Commonwealth v. Lowry, 374 Pa. 594, 98 A. 2d 733 (1953); and Commonwealth v. Bolish, 381 Pa. 500, 113 A. 2d 464 (1955). However, a very significant change in the concept of the rule of felony murder was enunciated by this Court in Commonwealth v. Redline, 391 Pa. 486, 137 A. 2d 472 (1958). Although the law as stated in Commonwealth v. Almeida, supra, was not specifically overruled, the law of the case was limited to its own factual situation.

"It is the *contention of the appellant* that under the rule of law of Redline, *he is not guilty of murder and hence, that his conviction must be declared void and release directed.*

"The legality of the appellant's conviction is and must be governed by the law of Pennsylvania as it existed at the time of said conviction: Commonwealth ex rel. Hough v. Maroney, 402 Pa. 371, 167 A. 2d 303 (1961). As of that relevant date, the question of who fired the fatal shot was irrelevant to appellant's guilt of murder in the first degree, so long as it was fired in aid of or in resistance to the perpetration of the robbery involved. Redline decided several years after the date of appellant's conviction is not relevant. The lower court, therefore, properly denied the writ requested.

. . .

"Order affirmed."

*Brady v. Maryland,* 373 U.S. 83, is the suppression of evidence case which most closely resembles Hough's

---

* See also, *Commonwealth v. Doris,* 287 Pa. 547, 135 Atl. 313; cf. also *Commonwealth v. Guida,* 341 Pa. 305, 19 A. 2d 98.

case. Brady and a confederate were arrested for par-ticipation in a robbery during which murder was com-mitted, allegedly by Brady. Brady was tried first. He admitted his guilt but claimed that his confederate had fired the fatal bullet and requested that the jury return a verdict of guilty "without capital punish-ment." Brady was convicted of first degree murder and sentenced to death. *The prosecution purposely withheld the confession made by Brady's confederate, which stated that he and not Brady had fired the fatal shot.* When Brady learned, after his conviction, of the existence of this confession he sought post-conviction relief. The [Maryland] Court of Appeals held that the suppression of the statement denied petitioner due process of law and granted him a new trial *but limited it solely to the question of punishment and not to the question of guilt.* The Supreme Court of the United States (by a vote of 7 to 2) *affirmed* the case on cer-tiorari and said (pages 85-86) : ". . . the Court of Ap-peals held that suppression of the evidence by the prosecution denied petitioner due process of law and remanded the case for a retrial of the question of punishment, not the question of guilt.* 226 Md. 422, 174 A. 2d 167. The case is here on certiorari, 371 U.S. 812.

"The crime in question was murder committed in the perpetration of a robbery. Punishment for that crime in Maryland is life imprisonment or death, the jury being empowered to restrict the punishment to life by addition of the words 'without capital punish-ment.' 3 Md. Ann. Code, 1957, Art. 27, §413. In Maryland, by reason of the state constitution, the jury in a criminal case are 'the Judges of Law, as well as

---

* Similarly, the suppressed evidence in *Hough's* case would go solely to the question of punishment and not to the question of guilt.

of fact.' Art. XV, §5. The question presented is *whether petitioner was denied a federal right when the Court of Appeals restricted the new trial to the question of punishment.*

"We agree with the Court of Appeals that suppression of this confession was a violation of the Due Process Clause of the Fourteenth Amendment. The Court of Appeals relied in the main on two decisions from the Third Circuit Court of Appeals—*United States ex rel. Almeida v. Baldi,* 195 F. 2d 815, and *United States ex rel. Thompson v. Dye,* 221 F. 2d 763—which, we agree, state the correct constitutional rule."

The decision of the Supreme Court of the United States in the *Brady* case is strong additional authority for denying Hough any relief in this appeal. Although Hough was originally sentenced to death, his sentence was commuted on February 24, 1955, as hereinabove stated, to life imprisonment. Life imprisonment is the most lenient possible punishment that can be imposed in Pennsylvania for the crime of first degree murder, Act of June 24, 1939, P. L. 872, §701, 18 P.S. §4701. Consequently, no purpose and no justice would be served in granting petitioner's requested writ and compelling the Commonwealth to retry him.

Moreover, it is often overlooked that a defendant enters a plea of guilty because of his knowledge that he was guilty of the crime charged, and not because of his knowledge of what evidence the Commonwealth may have against him. Therefore, the suppression of the Commonwealth's evidence in Hough's case had a material and relevant bearing not on his guilt but only on his punishment, because even if the suppressed evidence had been admitted *it would not have affected or invalidated his guilt of first degree murder* under the law of Pennsylvania which was then in effect.

*Commonwealth ex rel. Hough v. Maroney,* 402 Pa., supra, and *Commonwealth ex rel. Almeida v. Rundle,*

409 Pa., supra, are directly in point and require us, without the slightest doubt, to reverse Judge REED'S decision. Moreover, the decision of the Circuit Court of the United States in *United States ex rel. Almeida v. Baldi,* 195 F. 2d, supra, and the decision of the Supreme Court of the United States in *Brady v. Maryland,* 373 U.S., supra, which are hereinabove quoted, further demonstrate that there is no merit in Hough's contentions. To set aside Hough's conviction (and sentence of life imprisonment) on any finely spun theory, nineteen years after the robberies and the attempted murders by these three ultra dangerous criminals, one of which gun battles caused Ingling's death, would be to make a mockery of the Law and of Justice.

Order reversed, and petition for writ of habeas corpus dismissed.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

The central issue in this appeal is whether the state's suppression of evidence tainted Hough's decision to enter a guilty plea so that it cannot now be said that the plea was knowingly entered. The majority opinion's only allusion to this issue is its restatement of the rule that a guilty plea is equivalent to a conviction; this general rule, however, assumes that the plea was knowingly entered.

At the time Hough made his decision to plead guilty, it was irrelevant under the law of this Commonwealth whether the fatal bullet was fired by a co-felon or a third party.* In either event Hough would have been guilty of first degree murder. At the hearing below

---

* *Commonwealth ex rel. Hough v. Maroney,* 402 Pa. 371, 167 A. 2d 303 (1961).

Hough did not even attempt to offer a tenable explanation as to how knowledge of the source of the bullet would have caused him to enter a different plea. In view of this I find his self-serving statements that the source of the bullet was the decisive factor in his decision to enter a guilty plea to be inherently incredible.

If Hough had entered a not guilty plea in 1947, a jury would have had to return a first degree verdict unless (1) it found he was not guilty of the robbery (2) it engaged in a form of "jury nullification" by disregarding its instructions; a third possibility is that this Court might have used Hough's case, if appealed, to limit its then broad construction of the felony-murder rule. Hough concedes that he was a participant in the robbery, and I fail to see why, since his current sentence is the minimum for first degree murder, the later two possibilities justify a new trial.

My concurrence in this case, however, should in no way be viewed as even a semblance of condonation of the Commonwealth's action in suppressing this evidence. Indeed I fully share the view that such action is repugnant to our civilized notions of justice and deserves the strongest condemnation. Were I to have found that Hough was at all prejudiced, I would not hesitate to grant him a new trial.

Because I do not believe that the suppressed evidence was a relevant factor in his decision to plead guilty and because, in view of his life sentence, he has not been prejudiced, I concur in the result.

Mr. Justice JONES joins in this concurring opinion.