UNITED STATES of America ex rel. David ALMEIDA, Appellant,

v.

Alfred T. RUNDLE, Warden, State Correctional Institution, Philadelphia, Pennsylvania.

No. 16102.

United States Court of Appeals Third Circuit.

Argued June 22, 1967.

Decided Sept. 20, 1967.

Rehearing Denied Nov. 15, 1967.

Jerome J. Shestack, Echnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellant.

Michael J. Rotko, Asst. Dist. Atty., Philadelphia, Pa. (Alan J. Davis, Asst. Dist. Atty., Chief, Appeals Division, Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS and KALODNER, Circuit Judges, and VAN DUSEN, District Judge.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

This appeal is from the Order of the District Court for the Eastern District of Pennsylvania[1] denying the appellant David Almeida's petition for a writ of habeas corpus.

The questions presented are as follows:

(1) Was Almeida deprived of liberty without due process of law because the Commonwealth allegedly obtained his indictment "by the knowing and wilful suppression of evidence and the knowing and wilful presentation of untrue testimony" to the grand jury?

(2) Was the application to Almeida of the rule of Commonwealth v. Moyer, 357 Pa. 181, 53 A.2d 736 (1947) and Commonwealth v. Almeida, 362 Pa. 596, 68 A.2d 595, 12 A.L.R.2d 183 (1949), cert. den. 339 U.S. 924, 70 S.Ct. 614, 94 L.Ed. 1346 (1950), decided subsequent to the homicide which resulted in Almeida's conviction of murder in the first degree, an *ex post facto* application in violation of the due process clause of the federal Constitution; otherwise stated, was the act for which Almeida was convicted a crime when it was committed and was his conviction therefor in violation of the *ex post facto* provision of Article 1, § 10 of the federal Constitution?

(3) Was the determination of what constituted murder under the Pennsylvania Penal Code, 18 P.S. § 4701, as applied to Almeida's case, based upon laws too vague and indefinite to support his conviction and therefore a deprivation of his liberty without due process of law?

(4) Does Almeida's sentence to life imprisonment for murder constitute a denial of the equal protection of the laws since the decision in Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (1958)?

(5) Was Almeida's retrial, following a prior grant of the habeas corpus writ on his application, barred by the proscription against "double jeopardy" in the light of the prosecutor's misconduct "going to the integrity of the trial process?"

---

1. The Order was entered June 28, 1966 by District Judge Higginbotham. His

Opinion is reported at 255 F.Supp. 936 (E.D.Pa.1966).

Discussion of the issues presented must be prefaced by this factual background:

On January 30, 1947, Almeida and two confederates, Hough and Smith, perpetrated an armed robbery of a supermarket in Philadelphia, Pa. Almeida and Hough were each armed with .45 caliber revolvers; Smith had a .22 caliber revolver. As the three men attempted to flee the scene they engaged in a gun battle with police. Cecil Ingling, an off-duty policeman who, by mere coincidence, had also come upon the scene, accompanied by his wife, was killed by a bullet wound in the head while attempting to capture Hough who was firing directly at the police. During a subsequent pursuit of the robbers' car by police, Hough was arrested when he fell out of it as it made an abrupt turn; Smith and Almeida escaped but were later apprehended.

The three men were indicted for the murder of Ingling on April 1, 1947, on the Commonwealth's theory that it was a homicide in the commission of a felony.

Mrs. Ingling and Hough both appeared before the grand jury which returned the indictment for murder, pursuant to which Almeida was later tried in June, 1948, and found guilty of murder in the first degree with the penalty of death fixed by the trial jury.

Hough testified before the grand jury that Almeida fired the shot which killed Ingling, while Mrs. Ingling testified that Smith did so.[2] It is undisputed that the Commonwealth did not adduce testimony before the grand jury that Ingling was killed by a .38 caliber bullet from a policeman's revolver. At Almeida's trial, in 1948, the Commonwealth adduced the testimony of Mrs. Ingling that the fatal shot was fired by Smith, and the testimony of Hough that it was fired by Almeida. Several weeks after Almeida's conviction, in the trial of Smith, ballistic evidence was brought to light from which it would appear that a fellow-officer of Ingling had fired the fatal shot.

In Almeida's appeal from his conviction, this ballistic evidence was brought to the attention of the Supreme Court of Pennsylvania, which nevertheless affirmed, holding that the evidence as to who fired the fatal shot was irrelevant to Almeida's conviction of first degree murder. Commonwealth v. Almeida, 362 Pa. 596, 68 A.2d 595. On Almeida's federal petition in 1951 for writ of habeas corpus, the District Court found that the above-mentioned evidence was deliberately suppressed at Almeida's trial, and granted relief. United States ex rel. Almeida v. Baldi, D.C., 104 F.Supp. 321. In affirming, we agreed with the Commonwealth "that the question of who fired the fatal shot was irrelevant to the issue of whether Almeida was or was not guilty of first degree murder," but we held that the evidence was pertinent to the penalty of life or death, which the jury had to decide, and its suppression by the prosecution deprived Almeida of a fair trial, United States ex rel. Almeida v. Baldi, 195 F.2d 815, 819, 33 A.L.R.2d 1407 (1952), cert. den. 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341 (1953). Thereafter, on October 28, 1954, Almeida was arraigned again, entered a guilty plea and received the sentence of life imprisonment which he is now serving.

Almeida did not appeal his life sentence to the Pennsylvania Supreme Court.

In 1961, Almeida filed a petition for a writ of habeas corpus in the Philadelphia Common Pleas Court. It was denied without a hearing, and the Supreme Court of Pennsylvania affirmed. Commonwealth ex rel. Almeida v. Rundle, 409 Pa. 460, 187 A.2d 266 (1963), cert. den. 374 U.S. 815, 83 S.Ct. 1709, 10 L.Ed. 2d 1038.

In 1964, the instant petition for writ of habeas corpus was filed in the court be-

2. Judge Higginbotham by inadvertence stated in his opinion at 255 F.Supp. 939, that both Hough and Mrs. Ingling testified before the grand jury "that Almeida had fired the fatal bullet." Almeida's petition for a writ of habeas corpus be- low stated categorically that Mrs. Ingling testified [before the grand jury] that "she saw co-defendant Smith fire the fatal shot", and that Hough testified that Almeida "fired the shot which killed officer Ingling".

low and present counsel were appointed to represent Almeida at the hearing later conducted by Judge Higginbotham. In his thoroughly considered opinion at 255 F.Supp. 936 (E.D.Pa.1966) Judge Higginbotham exhaustively discussed the five questions presented on this appeal.[3] He concluded that they were without merit, and denied Almeida's petition.

Upon review of the record we are of the opinion that Judge Higginbotham did not err.

It would serve no useful purpose to engage in an extended discussion of each of the five questions presented in Almeida's behalf by his court-appointed counsel, in the light of Judge Higginbotham's well-reasoned and comprehensive opinion. We deem it necessary but to say, in disposition of these questions, seriatum, as follows:

As to the first question—was Almeida deprived of due process when he was indicted by a Grand Jury from which the Commonwealth withheld its alleged knowledge that officer Ingling was killed by a bullet from a fellow policeman's gun?

 On this score, it is settled law that (1) "[an] indictment returned by a legally constituted nonbiased grand jury, * * * is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment.", Lawn v. United States, 355 U.S. 339, 349, 78 S.Ct. 311, 317, 2 L.Ed. 2d 321 (1958) ;[4] (2) an indictment cannot be challenged "on the ground that there was inadequate or incompetent evidence before the grand jury", Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956) ; and (3) a prosecution is not abated, nor barred, even where "tainted evidence" has been submitted to a grand jury, United States v. Blue, 384 U.S. 251, 86 S.Ct. 1416, 16 L. Ed.2d 510 (1966).[5]

We gave effect to the foregoing cases in United States v. Grosso, 358 F.2d 154 (3 Cir., 1966). There, the trial court had denied the defendant's motion for the dismissal of his indictment which was premised on the ground that the indictment was predicated at least in part on illegally seized evidence. In rejecting the defendant's contention that the denial of his motion to dismiss the indictment was ground for reversal, we said (p. 163):

"It is well established that an indictment is not open to challenge on the ground that the evidence presented to the grand jury was either inadequate or incompetent".

To the same effect see United States v. Labate, 270 F.2d 122 (3 Cir. 1959), cert. den. sub nom. Sussman, et al. v. United States, 361 U.S. 900, 80 S.Ct. 211, 4 L.Ed. 2d 157; see too, West v. United States, 359 F.2d 50, 55–56 (8 Cir. 1966).

---

3. Our brother Freedman, then a District Judge, in appointing counsel, filed a Memorandum Opinion in which he stated that "While the constitutional claims [presented by the petition for the habeas writ] may well be lacking in merit, they are of sufficient interest and significance to be presented to the court on the relator's behalf by competent counsel". Judge Freedman further specified the first four of the five questions presented on this appeal "as expressly or impliedly raised by the petition", without limiting counsel to present other questions.

4. See, too, Holt v. United States, 218 U.S. 245, 247, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). There the Court refused to hold that an indictment should be quashed because it was procured in part by incompetent evidence stating (p. 247, 31 S.Ct. p. 4) : "The abuses of criminal practice would be enhanced if indictments could be upset on such a ground." See, also, Laughlin v. United States, 385 F.2d 287 (D.C.Cir. 7/28/67).

5. In United States v. Blue, 384 U.S. 251, p. 255, 86 S.Ct. 1416, p. 1419, this was said in note 3, "It does not seem to be contended that tainted evidence was presented to the grand jury; but in any event our precedents indicate this would not be a basis for abating the prosecution pending a new indictment, let alone barring it altogether. See Costello v. United States, 350 U.S. 359, 76 S.Ct. 406; Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311; 8 Wigmore, Evidence § 2184a, at 40 (McNaughton rev. 1961)."

To what has been said may be added that Almeida has not cited a single case in which the withholding of material evidence from the grand jury has either barred prosecution or served as the premise of subsequent invalidation of a conviction.

As to the second question—was the application to Almeida of the rule of Commonwealth v. Moyer, supra, and Commonwealth v. Almeida, supra, an *ex post facto* application in violation of the *ex post facto* provision of Article 1, § 10 of the federal Constitution?

█ That question must be answered in the negative in accordance with the explicit holding more than half a century ago in Frank v. Mangum, 237 U.S. 309, 344, 35 S.Ct. 582, 594, 59 L.Ed. 969 (1915), that the *ex post facto* provision of Section 10 of Article 1 of the federal Constitution "is directed against legislative action only, *and does not reach erroneous or inconsistent decisions by the courts*". (emphasis supplied).

The third question—as to whether the determination of what constituted murder under the Pennsylvania Penal Code, 18 P.S. § 4701, as applied to Almeida's case, was based upon laws "too vague and indefinite to support his conviction and therefore a deprivation of his liberty without due process of law", and the fourth question—does Almeida's sentence to life imprisonment for murder constitute a denial of the equal protection of the laws in view of the subsequent decision in Commonwealth v. Redline, supra, will be considered together since they are interwoven.

These questions place in issue the law of murder in Pennsylvania as applied to Almeida. Seriatum, Almeida contends that (1) at the time officer Ingling's fatal shooting occurred on January 30, 1947, the Pennsylvania law of murder was "vague and indefinite"; (2) the Supreme Court of Pennsylvania in Commonwealth v. Almeida, at 362 Pa. 596, 68 A. 2d 595, "changed" the law of murder when it held that where, in the commission of such a felony as robbery, a third

person is killed who is resisting the felon or trying to prevent his escape from the scene of the crime, the felon is guilty of murder in the first degree; and (3) the "changed" law eventuated in his sentence to life imprisonment in deprivation of due process since the decision in Commonwealth v. Redline, supra, where it was held that a co-felon cannot be found guilty of murder where a policeman justifiably kills the other felon as both flee from the scene of their armed robbery.

At this juncture it must be noted that subsequent to *Redline*, the Pennsylvania Supreme Court re-affirmed its prior holding in Commonwealth v. Almeida, in Commonwealth ex rel. Almeida v. Rundle, 409 Pa. 460, 464, 187 A.2d 266, in affirming the denial of Almeida's petition for a writ of habeas corpus. In doing so the Court said at pages 461, 462, 187 A.2d at page 267

"When Almeida was convicted of the crime involved, [on his plea of guilty on October 28, 1954] the law of this Commonwealth was that where, in the commission of a felony, such as robbery, *a third person is killed by one resisting the felon or who is endeavoring to prevent his escape from the scene of the crime*, the felon is guilty of murder in the first degree"

\* \* \* \* \* \*

"The legality of the appellant's conviction is and must be governed by the law of Pennsylvania as it existed at the time of said conviction: Commonwealth ex rel. Hough v. Maroney, 402 Pa. 371, 167 A.2d 303 (1961). As of that relevant date, the question of who fired the fatal shot was irrelevant to appellant's guilt of murder in the first degree, so long as it was fired in aid or resistance to the perpetration of the robbery involved. *Redline* [Commonwealth v. Redline, 391 Pa. 486, 137 A. 2d 472] *decided several years after the date of appellant's conviction is not relevant.*" (emphasis supplied)

Recently, the Supreme Court of Pennsylvania in Commonwealth ex rel. Hough v. Maroney, 425 Pa. 411, 229 A.2d 913,

915 (May 24, 1967), cited and applied the foregoing holding, in reversing the granting of a writ of habeas corpus to Hough, one of Almeida's accomplices.

Pennsylvania has no statutory definition of murder: it is founded upon the common law and includes the felony-murder concept. A statute, however, provides that if the felony perpetrated is one of the group listed, and robbery is one, the homicide shall be first degree murder. 18 Pa.Stat.Ann. § 4701. See Keedy, History of Pennsylvania Statute Creating Degrees of Murder, 97 U.Pa.L.Rev. 759 (1949). Pennsylvania is not alone in this respect. See Michael and Wechsler, Criminal Law and its Administration, pp. 1270–1273; Morris, The Felon's Responsibility for the Lethal Acts of Others, 105 U. of Pa.L.Rev. 50, 51 fn. 6 (1956). Both Commonwealth v. Almeida and Commonwealth v. Redline are declarative on this subject and both start from the same point.

We are not involved, therefore, with the construction of a statute, which is accused of vagueness, nor need we explore the constitutional proscription against *ex post facto* legislation. Ross v. Oregon, 227 U.S. 150, 33 S.Ct. 220, 57 L.Ed. 458 (1913); Frank v. Magnum, supra. Yet we appreciate the amelioration that concepts of fundamental fairness may bring about. See e. g., James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961).

 The absence of a definition of murder in the degree statute, which Almeida asserts to be a demonstration of vagueness, is not a defect at all. True, the common law may be imprecise, but that is not a determinative factor here. The common law of murder is well enough defined, after centuries of application. It is equally clear that in "felony murder", the special malice which is essential to murder derives from the felony itself and is imputed, rather than from a deliberately direct malevolent and homicidal intent. What uncertainty exists, exists because of the accepted judicial process in administering the law.

We reach, then, Almeida's complaint that the Supreme Court of Pennsylvania changed the law of the state after his crime, as a consequence of which he is incarcerated for life for having committed murder, although before, the crime would not have been so characterized. Almeida does not so much rely on the law of Pennsylvania prior to his offense, as upon the decision of that Court in *Redline*. The majority of the Court there did indicate that the *Almeida* decision on the appeal from his conviction was a departure, but it did not overrule the *Almeida* case. We observe that in two later decisions, however, the Pennsylvania Supreme Court referred to *Redline* as having changed the law of the state with respect to felony murder. Commonwealth ex rel. Hough v. Maroney, supra; Commonwealth ex rel. Hough v. Maroney, 402 Pa. 371, 167 A.2d 303 (1961), cert. den. 366 U.S. 971, 81 S.Ct. 1936, 6 L.Ed.2d 1260. The latter case expressly affirms the law under which Almeida was first convicted and as enunciated in Commonwealth v. Almeida.

 It appears rather plainly that Almeida's appeal from his conviction presented to the Supreme Court of Pennsylvania a factual situation of first impression. But the common law is not paralyzed by first impressions. Florida Trailer & Equipment Company v. Deal, 284 F.2d 567, 572, 94 A.L.R.2d 638 (5 Cir. 1960). Nor is it compelled to direct the acquittal of Almeida because he presented a case of first impression. Moreover, it is not our function to determine whether, in reaching its conclusions the Pennsylvania tribunal may have erred. We can only say, after such investigation as is required, that it is our conclusion that the result which was reached did not vitiate any formulation specifically declared in Pennsylvania which theretofore would have acquitted Almeida. Indeed, if the *Almeida* result was not inevitable, it certainly was not without prediction, as the language employed in Commonwealth v. Moyer, supra, bears out. The opinion in that case plainly supports the *Almeida* rationale.

It is no answer to say that the *Almeida* result was obtained after the event occurred for in a very real sense every judicial decision, especially of the appellate courts, is retroactive: courts proceed on a case by case basis, and decide what is before them. They do not, usually, make rules for the future, as an administrative agency, albeit what courts have said and done presumably imparts, insofar as possible, a high degree of stability and predictability to the law. The judicial process, however, is not a rigid and sterile one. As a recent example, see Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Further, the result of *Almeida* is not so shockingly in contravention of preexisting notions and policies in the law as to call into play the protective force of the Fourteenth Amendment. See People v. Harrison, 176 Cal.App.2d 330, 345, 1 Cal.Rptr. 414, 425 (1959); State v. Morran, 131 Mont. 17, 306 P.2d 679 (1957). Both cases found sufficient merit in the *Almeida* rationale to adopt it. See also Taylor v. State, 41 Tex.Cr.R. 564, 55 S.W. 961 (1936); Miers v. State, 157 Tex.Cr. R. 572, 251 S.W.2d 404 (1952); People v. Podolski, 332 Mich. 508, 52 N.W.2d 201 (1952), cert. den. 344 U.S. 845, 72 S. Ct. 62, and see Perkins on Criminal Law (1957), pp. 631–633; 3 Villanova L.Rev. 518, 524, n. 42.

■ Finally, we note, for completeness, the argument of *Almeida* based on equal protection of the law. In effect, it is said, since the revelation of *Redline*, he alone stands convicted of murder in the circumstances of his case. The argument might deserve more attention if Almeida's circumstances came after *Redline*. The short answer is that Pennsylvania did not apply to Almeida a rule which it would not have applied to others in similar circumstances, and the subsequent *Redline* decision does not, however it is interpreted, make out a case as to which "equal protection" becomes involved.

■ What has been said brings us to the fifth and remaining question—was

Almeida's retrial, following granting of the federal writ of habeas corpus, barred by the proscription against "double jeopardy" in the light of the state prosecutor's conduct "going to the integrity of the judicial process?"

The dispositive answer to that question is given in our statement in United States ex rel. Almeida v. Baldi, supra, 195 F.2d at 825, note 30, that:

"The grant of the writ will not keep Almeida from being tried again for he cannot successfully plead double jeopardy."

We adhere to that declaration.

For the reasons stated the Order of the District Court will be affirmed. We desire to express merited appreciation to counsel appointed by the District Court for his indefatigable and able endeavors.

BIGGS, Circuit Judge, concurs in the decision reached in the majority opinion.